UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| ERIC GAMBLE, | : | |
|     Plaintiff, | : | No. 3:20-cv-1273 (KAD) |
| | : | |
| v. | : | |
| | : | |
| GARCIA, et al., | : | |
|     Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

**Preliminary Statement**

Plaintiff, Eric Gamble ("Gamble"), currently confined at Cheshire Correctional Institution in Cheshire, Connecticut, filed this complaint *pro se* pursuant to 42 U.S.C. § 1983. Gamble names three defendants: Correctional Officer Garcia, Captain Rodriguez, and Counselor Supervisor Long. Gamble seeks damages from the defendants in their individual capacities for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments as well as under state law. The complaint was received on September 1, 2020. Gamble's motion to proceed *in forma pauperis* was granted on September 2, 2020.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments

[they] suggest[].ˮ *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On April 1, 2020, Captain Rodriguez approached Gamble at Cheshire Correctional Institution ("Cheshire") and asked if Gamble was interested in volunteering at Northern Correctional Institution ("Northern"). Doc. No. 1 ¶¶ 1-2. Gamble alleges that Captain Rodriguez told him that, if he volunteered, he would receive a positive performance evaluation for parole, be placed at the top of the job list when he returned to Cheshire and receive substantial recreation. *Id.* ¶ 3. Captain Rodriguez also said that the volunteers were needed because the usual workers had contracted the corona virus and their facility was on lockdown. *Id.* ¶ 4. Gamble agreed and was sent to Northern the following day. *Id.* ¶ 5.

On April 3, 2020, Counselor Supervisor Long told Gamble that she would be his supervisor and that he should contact her if he needed anything. *Id.* ¶ 6. Officer Smith assigned Gamble's duties which included cleaning the school, visiting, and medical areas. *Id.* ¶ 7. On April 4, 2020, Gamble was told that he would have to work on second shift in addition to first shift. *Id.* ¶ 8.

On April 5, 2020, Gamble learned that Officer Smith had contracted the corona virus. *Id.* ¶ 9. Counselor Supervisor Long told Gamble that she could not have him tested because he had no symptoms. *Id.* ¶ 10. That same day, Gamble learned that inmates testing positive for the corona virus were being housed at Northern. *Id.* ¶ 11. Gamble asked Counselor Supervisor Long if he would have to work around infected inmates and became upset when she said he already was working around them in the medical unit. *Id.* ¶ 12. Gamble said he would not have volunteered if he had known that infected inmates were at Northern. *Id.* ¶ 13.

On April 8, 2020, Captain Black told the workers that they would have to work third shift in addition to first and second shifts. *Id.* ¶ 14. Gamble objected, saying that he was already working hard on first and second shifts and complained about not being told he was working around infected inmates. *Id.* Lieutenant Hollister said that Gamble's statements could be construed as "inciting" or "causing a disruption" as he made the statements in the presence of other inmates. *Id.* ¶ 15.

From April 9, 2020 until April 15, 2020, Gamble was not permitted a shower after returning from work. *Id.* ¶ 16. He also was denied group recreation with the other workers and was isolated from them. *Id.* When Gamble complained to Counselor Supervisor Long about the danger of being denied showers after exposure to infected inmates and contaminated areas, she did nothing and said it was out of her hands. *Id.* ¶ 17. Gamble told her that he no longer wanted to be a volunteer and wanted to return to Cheshire. *Id.* ¶ 18. Counselor Supervisor Long said he could not quit; he was no longer a volunteer as he was being paid for his work. *Id.*

Several inmates began to complain about their treatment and conditions. *Id.* ¶ 19. Counselor Supervisor Long came to the worker housing unit and asked who did not want to be

3

there anymore.  *Id.*  When Gamble and several other inmates raised their hands, Counselor Supervisor Long said that, if they quit, they would receive Class A disciplinary reports and be placed in the restrictive housing unit ("RHU").  *Id.*

On April 15, 2020, Gamble was denied a shower after finishing his work on first shift.  *Id.* ¶ 20.  Gamble was told to lockup until it was time to report for work on second shift.  *Id.*  Gamble told Officer Garcia that he needed a shower because he was cross contaminating his cell.  *Id.*  Officer Garcia said that Gamble was the main inmate making complaints and causing the harsh conditions for everyone, then escorted Gamble to the shower.  *Id.* ¶ 21.  Gamble told Officer Garcia that Counselor Supervisor Long said that all inmates should shower after returning from work and accused Officer Garcia of targeting him by making him contaminate his cell before allowing him to shower.  *Id.* ¶ 22.

When called for work on second shift, Gamble refused to go.  *Id.* ¶ 23.  Defendant Garcia told him he had to work, but Gamble continued to refuse and told Officer Garcia that he was writing to the warden about being denied a shower immediately after work.  *Id.*  Officer Garcia refused to release Gamble for recreation and told him he was receiving a disciplinary report for threats.  *Id.* ¶ 24.  The disciplinary report stated that Gamble threatened to harm another inmate to be transferred from Northern.  *Id.* ¶ 25.  Gamble denies making the statement and alleges that Officer Garcia issued the disciplinary report in retaliation for Gamble's statement that he was writing to the warden.  *Id.* ¶ 26.

On April 16, 2020, Gamble was put on Administrative Detention and all Gamble's possessions were removed from his cell.  *Id.* ¶ 27.  The following day, Gamble was returned to Cheshire and put in RHU pending adjudication of the disciplinary charge.  *Id.* ¶ 28.  On April 24,

2020, the charge was dismissed for insufficient evidence. *Id.* ¶ 29.

Gamble alleges that inmates were not provided adequate personal protective equipment while working around COVID-19 inmates. *Id.* ¶ 30.

During the nine days he spent in RHU, Gamble was subjected to the following conditions: one hour of recreation per day for five days per week instead of two hours per day for seven days per week; no phone access; showers three days per week instead of seven; no access to commissary, television, radio, or games; no access to the gym or outside recreation; no personal laundry service; no human contact; and no visual stimulation from magazines, newspapers, or family photographs. *Id.* ¶ 32.

**Discussion**

In his jurisdictional statement Gamble states that he asserts claims for violation of his rights under the First, Eighth, and Fourteenth Amendments and state law. He asserts three claims for relief: (1) defendant Garcia retaliated against him for exercising his right to freedom of speech, *Id.* ¶ 46; (2) defendant Garcia issued him a false disciplinary charge and had Gamble confined in RHU for nine days, *Id.* ¶ 47; and (3) defendants Rodriguez and Long failed to protect him from unsafe conditions, *Id.* ¶ 48.

Gamble was a sentenced prisoner at all times relevant to this action. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379761 (showing Gamble was sentenced on January 14, 2014). Thus, any claims regarding the conditions of his confinement are cognizable under the Eighth, not the Fourteenth, Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment).

5

Any claims purporting to be brought under the Fourteenth Amendment are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Retaliation**

Gamble contends that Officer Garcia retaliated against him for reporting conditions of confinement issues. To state a First Amendment retaliation claim, Gamble must allege facts showing "(1) that the speech or conduct at issue was protected. (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and citations omitted).

Filing grievances is protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). Gamble, however, does not allege that he filed a grievance about the conditions of confinement. He alleges only that he told Officer Garcia that he intended to write to the warden and that he made verbal complaints to both Counselor Supervisor Long and Officer Garcia.

An inmates' oral speech is subject to reasonable limitations and may therefore not constitute protected activity. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995). The Second Circuit has not yet articulated a bright line test to determine whether an inmate's oral speech is constitutionally protected. Several district courts have held that, under some circumstances, oral complaints to a correctional officer may be protected. *See, e.g., Smith v. Woods*, No. 03-CV-480(DNH), 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006) ("I acknowledge that the First Amendment protects, not only the filing of written grievances and complaints, but, under some circumstances, the making of oral complaints to corrections

6

officers.") (citing cases), *aff'd* 219 F. App'x 110 (2d Cir. 2007) (summary order).

      The distinction between protected and unprotected oral speech is not always clear. For example, in *Coleman v. Cuomo*, No. 9:18-CV-0390(MAD/CFH), 2019 WL 6829613, at *11 (N.D.N.Y. Dec. 13, 2019), *report and recommendation adopted sub nom. Coleman v. Racette*, 2020 WL 896785 (N.D.N.Y. Feb. 24, 2020), the plaintiff protested the correctional officer's order to discard property. The court noted that if the discussion was considered "an isolated, verbal dispute concerning the propriety of the amount of personal property in plaintiff's cell and a disagreement as to [the officer's] directive to throw it away," *id.*, it would not be protected speech. However, if "plaintiff's verbal protest could be construed as an oral complaint against [the officer's] order to remove property that plaintiff was permitted to have in his cell," *id.*, it could be considered protected activity. In this vein, if Gamble's statement that he intended to write to the warden about Officer Garcia's actions is construed as an expression of intent to file a grievance, it could be protected speech. *See Shine v. Hofman*, 548 F. Supp. 2d 112, 121 (D. Vt. 2008) (treating inmate's stated intent to file grievance as protected activity).

      Gamble's statements challenging safety practices and protocols could be construed as identifying constitutional violations. For purposes of initial review, therefore, the court assumes that Gamble engaged in protected activity.

      Gamble alleges that, as a result of his speech, Officer Garcia issued the allegedly false disciplinary report and caused him to be confined in RHU. He also alleges that, because of his earlier complaints, he was not permitted to shower for several days in violation of safety procedures. The court considers these allegations sufficient to plausibly allege both adverse action and the required causal connection to his complaints. The First Amendment retaliation

claim will proceed against Officer Garcia.

**False Disciplinary Charge and RHU Confinement**

In his second claim, Gamble contends that the allegedly false disciplinary report also violated his Eighth Amendment rights as did the conditions he experienced during his nine-day stay in RHU.

Prison inmates have no general constitutional right to be free from false accusations in a disciplinary report. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). To state a cognizable claim, the inmate must allege something more, such as retaliation for exercising a constitutional right. *Id.* (citing *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988)). The court determined above that Gamble's First Amendment retaliation claim based on the retaliatory issuance of the disciplinary report will proceed. Any additional Eighth Amendment claim premised upon the same conduct is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Gamble also challenges the RHU conditions as having violated his Eighth Amendment rights. Prison conditions violate the Eighth Amendment if "they result in the 'unnecessary and wanton' infliction of pain and are 'totally without penological justification.'" *Wesolowski v. Kamas*, 590 F. Supp. 2d 431, 434 (W.D.N.Y. 2008) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), *aff'd,* 409 F. App'x 476 (2d Cir. 2011). The conditions must be more than unpleasant; they must constitute "extreme deprivations" which are "barbarous or shocking to the conscience." *Id.* (internal quotation marks and citations omitted). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Gamble must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal

civilized levels of life's necessities"—and a subjective element—that the defendant "acted with a sufficiently culpable state of mind, such as deliberate indifferent to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)).  To satisfy the subjective component of the deliberate indifference test, Gamble must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and … dr[e]w that inference").  Negligent conduct does not meet this standard.  *Farmer*, 511 U.S. at 835.

Gamble alleges that he was confined in RHU for nine days and describes the conditions experienced as compared to conditions in general population -- he had reduced recreation time and showers, and no access to the commissary, television, radio, games, the gym, outdoor recreation, magazines, newspapers, family photographs, or personal laundry service.  Gamble further alleges that he was denied human contact.  Doc. No. 1 ¶ 32.  Courts considering similar conditions for longer periods of time have consistently held that such conditions do not violate the Eighth Amendment.  *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381-82 (S.D.N.Y. 2011) (ninety-day confinement in SHU with loss of visitation, phone and commissary privileges); *Pilgrim v. Artus*, No. 07-CV-1001, 2010 WL 3724883, at *9 (N.D.N.Y. Mar. 18, 2010) (four periods in keeplock of at least one month each with loss of phone, commissary, and visits, twenty-three hour confinement, and three showers per week did not violate Eighth

Amendment), *report and recommendation adopted* 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010*)*.  The length of the exposure to the conditions is an important factor.  *See Reynolds v. Arnone*, 402 F. Supp. 3d 3, 18-20 (D. Conn. 2019) (finding that conditions similar to those in RHU, including limited abilities for meaningful social interaction, constitute deprivation of a basic human need when part of life sentence).

Gamble endured these allegedly onerous conditions for nine days.  Such a short exposure is not a sufficiently serious deprivation so as to shock the conscience.  Thus, Gamble fails to allege facts that plausibly support the objective component of the deliberate indifference test for purposes of the Eighth Amendment.

Moreover, even if the conditions and duration of his confinement in the RHU could satisfy the objective component, Gamble fails to support the subjective component with any factual allegations.  Gamble alleges that he was sent to RHU while the disciplinary charge was investigated and was released as soon as the charge was dismissed.  Thus, he has identified a penological justification for the confinement.  Gamble also fails to allege facts showing that any named defendant appreciated that he would suffer a substantial risk to his health from the nine-day confinement.  Accordingly, Gamble's challenge to the conditions of his confinement in RHU is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Deliberate Indifference to Health and Safety**

In his third claim, Gamble argues that defendants Rodriguez and Long were deliberately indifferent to his health and safety by exposing him to inmates infected with the corona virus without telling him or providing proper protective equipment.

To state a claim for deliberate indifference to safety, Gamble must show that he suffered

10

a sufficiently serious constitutional deprivation and the defendants acted with deliberate indifference. *See Conquistador v. Adamaitis*, No. 3:19-cv-430(KAD), 2019 WL 1573710, at *2 (D. Conn. Apr. 11, 2019) (citation omitted). When evaluating a claim for deliberate indifference to safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The court makes that determination in light of the steps the facility has already taken to mitigate the danger. *Id.*

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Of late, courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chun v. Edge*, No. 20-cv-1590(PRK)(RLM), 2020 WL 3055669, at *24 (E.D.N.Y. June 9, 2020) (citing cases). Gamble alleges that he was not told about the virus when asked to volunteer to go to Northern and was not provided proper protective equipment and showers to protect him from the virus once there. Based on these allegations, the court concludes that Gamble has plausibly alleges a serious risk

11

of harm to satisfy the objective component.

Subjectively, Gamble alleges that he repeatedly informed Counselor Supervisor Long about the deficiencies in the safety practices and protocols regarding his exposure to infected inmates. He also repeatedly asked to return to Cheshire. He alleges that the deficiencies were not corrected, and he was not permitted to leave Northern. Gamble suggests that Captain Rodriguez was aware, but deliberately chose not to mention, that Gamble would be exposed to the virus. The court considers these allegations sufficient at this stage of litigation to meet the subjective component of the deliberate indifference test.[1]

**State Constitutional Claims**

Gamble contends that Officer Garcia's retaliatory actions violated Article first, section 5 of the Connecticut Constitution and his actions in issuing the allegedly false disciplinary charge and confining Gamble in RHU violated his rights under Article first, section 9 of the Connecticut Constitution.

In *Binette v. Sabo*, 244 Conn. 23, 26, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action for damages under Article first, section 9 of the Connecticut Constitution for illegal search and seizure of private homes by police officers. The

---

[1] Gamble also includes allegations regarding the conduct of Lieutenant Hollister in this claim. To the extent that the Plaintiff intended to include Lieutenant Hollister as a defendant, those claims are not permitted. First, Lieutenant Hollister is not properly a defendant in this case. Federal Rule of Civil Procedure 10(a) requires that all parties be named in the case caption. Gamble includes only three defendants in the caption, Garcia, Rodriguez, and Long. Second, Gamble alleges no facts demonstrating that Lieutenant Hollister had any role in the lack of personal protective equipment or showers. Gamble alleges only that Lieutenant Hollister commented that Gamble's statements, made in the presence of other inmates, could be construed as inciting a disturbance. As Gamble does not allege that Lieutenant Hollister was responsible for his work at Northern or the lack of safety precautions, there is no basis for a claim against Lieutenant Hollister.

court emphasized, however, that the decision to recognize a private right of action in that case, "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. The decision to recognize such causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48. The Connecticut Supreme Court has not extended the private right of action under Article first, section 9 to cases brought by prisoners regarding their confinement. *See Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199-200 (D. Conn. 2010) (declining to exercise supplemental jurisdiction over claim under Article first, section 9 for forcing pretrial detainee to share cell with convicted inmate and providing inadequate mental health care as novel and undeveloped issue of state law).

The free speech clause of the Connecticut Constitution is set forth in Article first, sections, 3-5 and 15. Although Connecticut recognizes a private right of action for violation of the free speech clause, it has not done so in the context of a case filed by prisoners regarding their confinement. *See Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-25 (D. Conn. 2005) (declining to recognize private right of action under various provisions of Connecticut Constitution, including Article first, sections 4, 5, 7, 8, 9, 10, 14, and deferring to state courts to recognize such a cause of action in the first instance).

As the state courts have not recognized private rights of action for prisoners under these constitutional provisions, the court declines to exercise supplemental jurisdiction over the state constitutional claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the claim raises a novel or complex issue of State law.").

**Orders**

13

Any intended Fourteenth Amendment claims and the Eighth Amendment claim against Officer Garcia are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the First Amendment retaliation claim against Officer Garcia and the Eighth Amendment deliberate indifference to health and safety claims against defendants Captain Rodriguez and Counselor Supervisor Long.

The court declines to exercise supplemental jurisdiction over Gamble's state constitutional claims.

The court enters the following additional orders.

(1) **The Clerk shall** verify the current work address for defendants Garcia, Rodriguez, and Long with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided on or before October 13, 2020, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2) T**he Clerk shall** send Gamble a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)	Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by April 22, 2021.  Neither discovery requests nor responses are to be filed with the court.

(6)	All motions for summary judgment shall be filed by May 22, 2021.

(7)	Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)	If Gamble changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Gamble must give notice of a new address even if he is incarcerated. Gamble should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Gamble has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Gamble should also notify the defendants or the attorney for the defendants of his new address.

(9)	Gamble shall utilize the Prisoner Efiling Program when filing documents with the court.  Gamble is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)	The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall

send a copy to Gamble.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of September 2020.

/s/
Kari A. Dooley
United States District Judge